## STATE EX SQUIRE v HARRIS

Ohio Appeals, 8th Dist, Cuyahoga Co

No 16260. Decided June 6, 1938.

Herbert S. Duffy, Atty. Gen., Columbus, E. S. Lindeman, Special Counsel, Cleveland, Ernest J. Halamback, Cleveland, Phillip F. Marquard, Cleveland Asst. Special Counsels for plaintiff-appellee.

Klein and Diehm, Cleveland, for defendant-appellant.

for her ownership of certificate No 19878 being for one hundred (100) shares.

"(signed) Herbert S. Duffy, Attorney General,
Perry L. Graham,
Attorneys for plaintiff.

"(signed) Klein & Diehm by Jos. J. Klein, Attorneys for defendant.
John H. Harris, 1156 Union Trust Bldg. Main 2084."

It is claimed by John H. Harris that no liability attaches to him under the Constitution and the General Code of Ohio, for the reason that he was at no time a stockholder in a bank.

**The Constitution of Ohio, Article XIII §3, reads as follows:**

"Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her; except that stockholders of corporations authorized to receive money on deposit shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such corporation, to the extent of the amount of their stock herein, at the par value thereof, in addition to the amount invested in such shares. * * *."

Plaintiff calls attention particularly to the language:
"that stockholders of corporations authorized to receive money on deposit shall be held individually responsible. * * *"

He also refers the court to the definition of the term 'bank' in §710-2:

"The term 'bank' shall include any person, firm, association or corporation soliciting, receiving or accepting money, or its equivalent on deposit as a business, whether such deposit is made subject to check or is evidenced by a certificate of deposit, a pass-book, a note, a receipt, or other writing, and unless the text otherwise requires as used in this Act includes commercial banks, savings banks, trust companies and unincorporated banks. * * *"

The record discloses that John H. Harris became a record holder of stock of The Union Trust Company on March 17, 1933. It is maintained by the appellant that John H. Harris at no time became a shareholder in an institution authorized to receive money on deposit.

## OPINION

By LEVINE, PJ.

This case was tried in the Common Pleas Court and the trial resulted in a judgment against John H. Harris, and in favor of S. H Squire, superintendent of banks of the state of Ohio in charge of the liquidation of The Union Trust Company, Cleveland, Ohio.

An appeal on law is now being prosecuted to this court, setting forth various assignments of error alleged to have occurred in the Common Pleas Court.

The defendant-appellant was one of a great many defendants named in a suit instituted by the superintendent of banks of the state of Ohio, to assess the double liability provided by the **Ohio Constitution,** Article **XIII,** §3, against the stockholders of The Union Trust Company.

The bill of exceptions in this case contains a stipulation as follows:

"It is stipulated by and between the attorneys for the plaintiff and the attorneys for the defendant, John H. Harris, that the following facts are agreed upon:

"1. The defendant, John H. Harris, purchased one hundred (100) shares of stock of The Union Trust Company, through his agent, Hornblower and Weeks, from Mary B. Sturtevant, through her agents, Curtiss House & Company, on February 27, 1933.

"2. The certificate of stock purchased by John H. Harris was No 19878 in the name of Mary B. Sturtevant.

"3. The stock was transferred of record into the name of John H. Harris on March 17, 1933, and certificate No 20511 was issued in the name of John H. Harris on that date.

"4. John H. Harris is the record owner of no other stock than the foregoing, as represented by certificate No 20511.

"5. The superintendent of banks in charge of the liquidation of The Union Trust Company, has instituted collection proceedings against Mary B. Sturtevant

The bank was conceded·. placed on a restricted basis on February 27, 1933. While it is true the liquidator did not take actual possession of the bank until June 15, 1933, yet it is equally clear that since February 27, 1933, it ceased to do business as a bank authorized to receive money on deposit. Since John H. Harris became a record holder of one hundred shares of stock on March 17, 1933, he became a shareholder in the Union Trust Company, a corporation, but at that time The Union Trust Company ceased to be a bank authorized to receive money on deposit.

The original purpose of the Constitution of Ohio and the statutes, in providing for super-added liability was, it must be conceded, to protect the depositors and other creditors of the bank. Theoretically it was assumed that the depositors and all others extending credit to the bank relied on the added security furnished them by imposing the super-added liability on all stockholders. By no stretch of imagination can it be said that any of the bank depositors relied on this protection afforded by law on the fact that John H. Harris became a stockholder of one hundred shares on March 17, 1933 as the bank on this date and since February 27, 1933, ceased to be a bank authorized to receive money on deposit.

"As a general rule, it would seem to be clear that a transfer of stock in a bank after its failure and closing or suspension will not relieve the transferrer of his statutory liability for its debts. It has also been held true, correspondingly, that the transferee of stock in a bank transferred at such time is not liable for the stockholder's added liability for the debts of the bank. * * *." 7 Am. Jur. 96.

In the case of Broderick v Aaron, 268 New York, 260 (103 A. L. R. 687), the bank of the United States failed on December 11, 1930. Subsequent to that date and on December 26, 1930, one of the stockholders of the records of the bank at the time the bank closed, transferred his shares to another and the superintendent of banks of the state of New York sued the transferee and secured a judgment against him. The Court of Appeals of New York, in an opinion rendered by Judge Lehman, reversed the judgment. The language used in the opinion is written in clear and lucid language. We shall therefore quote from the opinion as follows:

"We fail to find in the law any indication of intent to hold responsible for the debts and liabilities of a bank those who acquired stock in a banking corporation after it had ceased to do business as a bank under the mandate of the state. Until then, the responsibility could be shifted from one person to another by transfer of stock. Thereafter the responsibility became irrevocably affixed to those who were then 'stockholders.' Those who thereafter acquired the stock were at no time stockholders in a corporation which conducted, or which had power to conduct a bank. They at no time as stockholders shared in the control of a banking corporation. They at no time shared in the profits derived from a banking business. None of the reasons which led the state to restrict exemption from personal responsibility of stockholders in banks apply to persons who acquired stock after the bank was closed. Nowhere in the statute or constitution can be found any clear indication that not only those who were stockholders when the bank closed are to be held responsible but also those who acquired stock thereafter. On the contrary, it seems clear that the status of 'stockholders' must, under the statute and for purposes of the statute, be fixed as of a particular date, and when that status is fixed the class of 'stockholders' becomes unchangeable."

"By the closing of the bank, the right of the corporation to conduct a banking business is terminated, or at least suspended. Though even after such closing, stockholders may still transfer their stock, and the new owners thus obtain the status of stockholders, what passes to them by such transfer is only a stockholder's right in a corporation which is temporarily or permanently without power to conduct a bank."

We can discern no difference between the question before us, and the question decided by the Court of Appeals of New York in the case of Broderick v Aaron, supra.

The right of the Union Trust Company to conduct a banking business was at least suspended on and after Feb. 27, 1933. Stock acquired after such date constituted the stockholder merely a stockholder in a corporation. He does not thereby become a stockholder in a bank because a banking institution which is temporarily or permanently without power to receive money on deposit ceases to be a bank under the def-

694

inition of a bank both in the Constitution as it formerly read and the State law.

The entire basis of the double liability law was the theory that depositors should be able to look to the stockholders of a financial institution and determine from such lists of stockholders whether they desire to place their money in such bank.

No depositor could have seen the name of John H. Harris on the stock records of The Union Trust Company as he did not become a stockholder of record until March 17, 1933, when The Union Trust Company no longer was authorized to receive money on deposit.

To sustain the judgment against John H Harris would require an enlargement of the language of our Constitution, which limits the stockholders liability to stockholders in corporation authorized to receive money on deposit. This the courts are not empowered to do.

We therefore hold that the Common Pleas Court committed error in rendering judgment against John H. Harris.

Proceeding to enter the judgment which in our opinion should have been entered, the judgment of the Common Pleas Court is ordered reversed, and final judgment is rendered in favor of appellant, John H. Harris.

TERRELL, J., concurs.
LIEGHLEY, PJ., dissents.